SULLIVAN & WORCESTER LLP
Franklin B. Velie
Jonathan G. Kortmansky
Mitchell C. Stein
1290 Avenue of the Americas
New York, New York 10104
Telephone: (212) 660-3000
Facsimile: (212) 660-3001

*Attorneys for Defendant UniCredit Bank Austria AG*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>Plaintiff-Applicant,<br><br>v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>Defendant. | SIPA LIQUIDATION<br><br>Adv. Pro. No. 08-01789 (BRL)<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>Plaintiff,<br><br>v.<br><br>SONJA KOHN, et al.,<br><br>Defendants. | Adv. Pro. No. 10-5411 (BRL)<br><br>No. 11 Civ. 1181 (JSR) |

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT UNICREDIT BANK AUSTRIA AG'S**
**MOTION TO DISMISS COUNTS 1, 2 AND**
**20 THROUGH 22 OF THE AMENDED COMPLAINT**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................................ 1

THE ALLEGATIONS AGAINST BANK AUSTRIA ...................................................................... 2

ARGUMENT ....................................................................................................................................... 7

    I.    Bank Austria Did Not Commit a Pattern of Racketeering Activity ........................ 8

        A.  Plaintiff Has Not Alleged that Bank Austria Committed Predicate Acts .................................................................................................................. 8

        B.  Plaintiff Has Not Alleged a Continuous Pattern of Racketeering Activity by Bank Austria ........................................................................................ 9

    II.   Bank Austria Did Not "Conduct or Participate in" the Affairs of the Enterprise ................................................................................................................ 10

    III.  Plaintiff Has Failed to Plead that Bank Austria Proximately Caused Plaintiff's Injury ............................................................................................... 12

    IV.  Plaintiff Has Failed to Allege that Bank Austria was part of any RICO Conspiracy under 18 U.S.C §1962(d) ..................................................................... 13

CONCLUSION .................................................................................................................................. 15

## TABLE OF AUTHORITIES

**Cases**

*Anza v. Ideal Steel Supply Corp.*,
    547 U.S. 451, 456 (2006)..................................................................................................13

*Atuahene v. City of Hartford*,
    10 Fed. Appx. 33, 34 (2d Cir. 2001).....................................................................................6

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544, 555, 556 (2007).........................................................................................5, 9

*Calka v. Kucker & Bruh, LLP*,
    No. 99 Civ. 4999, 2000 WL 557266 at *8 (S.D.N.Y. May 8, 2000)..................................10

*Cofacredit, S.A. v. Windsor Plumbing Supply Co. Inc.*,
    187 F.3d 229, 242 (2d Cir. 1999)......................................................................................10

*Colony at Holbrook, Inc. v. Strata, Inc.*,
    928 F.Supp. 1224, 1238 (E.D.N.Y.1996) .........................................................................14

*DDR Const. Services, Inc. v. Siemens Industry, Inc.*,
    770 F.Supp.2d 627, 650 (S.D.N.Y. 2011) ........................................................................12

*DeFalco v. Bernas*,
    244 F.3d 286, 306, 321 (2d Cir. 2001)...........................................................................7, 9

*Dep't of Econ. Dev. v. Arthur Andersen & Co. (U.S.A.)*,
    924 F. Supp. 449, 467 (S.D.N.Y. 1996)...................................................................... 11-12

*Duncan v. Pencer*,
    No. 94 Civ. 0321, 1996 WL 19043 at *10 (S.D.N.Y. Jan. 18, 1996).................................9

*Elsevier Inc. v. W.H.P.R., Inc.*,
    692 F. Supp. 2d 297, 308 (S.D.N.Y. 2010).......................................................................11

*First Capital Asset Management, Inc. v. Satinwood, Inc.*,
    385 F.3d 159 (2d Cir. 2004)..............................................................................................10

*First Cent. Sav. Bank v. Meridian Residential Capital*,
    2011 WL 838910 at * 8 (E.D.N.Y. Mar. 3, 2011)....................................................... 10-11

*First Nationwide Bank v. Gelt Funding Corp.*,
    27 F.3d 763, 771 (2d Cir. 1994)........................................................................................13

*Fresh Meadow Food Services, LLC v. RB 175 Corp.*
    282 Fed. Appx. 94, 97, 98 (2nd Cir 2008)....................................................................7, 10

*GICC Capital Corp. v. Technology Finance Group, Inc.*,
   67 F.3d 463, 467 (2d Cir.1995) ........................................................................................... 9

*H.J. Inc. v. Northwestern Bell Telephone Co.*,
   492 U.S. 229, 239, 242 (1989) ........................................................................................... 9

*Holmes v. Securities Investor Protection Corp.*,
   503 U.S. 258, 268-269 (1992) ......................................................................................... 12

*Indus. Bank of Latvia v. Baltic Financial Corp.*,
   1994 WL 286162 at *3 (S.D.N.Y. June 27, 1994) ........................................................... 12

*Int'l Bhd. of Teamsters v. Carey*,
   163 F.Supp.2d 271, 280-281 (S.D.N.Y. 2001) .................................................................. 9

*Kalnit v. Eichler*,
   264 F.3d 131, 140-141 (2d Cir. 2001) ............................................................................... 8

*Lerner v. Fleet Bank, N.A.*,
   318 F.3d 113, 120 (2d Cir. 2003) .................................................................................... 12

*Lerner v. Fleet Bank, N.A.*,
   459 F.3d 273, 290-291 (2d Cir.2006) ................................................................................ 5

*MLSMK Inv. Co. v. JP Morgan Chase & Co.*
   737 F. Supp. 2d 137, 142-143, 144 (S.D.N.Y. 2010) ............................................... 5, 7, 8

*Nasik Breeding & Research Farm Ltd. v. Merck & Co., Inc.*,
   165 F. Supp. 2d 514, 540 (S.D.N.Y. 2001) ............................................................... 13, 14

*OSRecovery, Inc. v. One Groupe Intern., Inc.*,
   2004 WL 238035 at *1 (S.D.N.Y. Feb. 9, 2004) ........................................................... 5-6

*OSRecovery, Inc. v. One Groupe Int'l, Inc.*,
   354 F.Supp.2d 357, 373 (S.D.N.Y. 2005) ....................................................................... 10

*Redtail Leasing, Inc. v. Bellezza*,
   No. 95 Civ. 5191, 1997 WL 603496 at *5 (S.D.N.Y. Sept. 30, 1997) ............................. 12

*Reves v. Ernst & Young*,
   507 U.S. 170, 185 (1993) ................................................................................................. 12

*Rosner v. Bank of China*,
   528 F. Supp. 2d 419, 431 (S.D.N.Y. 2007) ..................................................................... 12

*Rosner v. Rosner*,
   766 F.Supp.2d 422, 425 (E.D.N.Y. 2011) ....................................................................... 10

*Salinas v. United States*
    522 U.S. 52, 65 (1997)..................................................................................................14

*Schmidt v. Fleet Bank*,
    1998 WL 47827 (S.D.N.Y. Feb. 4, 1998)..........................................................................8

*Sedima, S.P.R.L. v. Imrex Co., Inc.*,
    473 U.S. 479 (1985)....................................................................................................13

*Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*
    742 F.2d 786, 792 n. 8 (3rd Cir. 1984) ...........................................................................14

*South Cherry St., LLC v. Hennessee Group LLC*,
    573 F.3d 98, 113 (2d Cir. 2009)......................................................................................8

*United States v. Viola,*
    35 F.3d 37, 44 (2nd Cir. 1994).......................................................................................14

*Vicon Fiber Optics Corp. v. Scrivo*,
    201 F. Supp. 2d 216, 219 (S.D.N.Y. 2002)....................................................................13


**Rules and Statutes**

Fed. R. Civ. P. 9(b) .................................................................................................................8

18 U.S.C. §1962(c) ......................................................................................................... *passim*

18 U.S.C. §1962(d) ......................................................................................................... *passim*

Defendant UniCredit Bank Austria AG ("Bank Austria" or "BA") respectfully submits this memorandum of law in support of its motion to dismiss with prejudice Counts 1, 2, 20, 21 and 22 of the Amended Complaint.[1]  Bank Austria joins in the legal arguments made by counsel for defendants UniCredit S.p.A. ("UniCredit") and Pioneer Global Asset Management S.p.A. (the "UniCredit Brief" or "UniCredit Br.").  Bank Austria submits that the following arguments in the UniCredit Brief are dispositive of the claims against Bank Austria:  (1) the RICO claims are barred by the PSLRA; (2) the RICO claims are impermissibly extraterritorial; (3) Plaintiff fails to allege RICO standing; (4) Plaintiff lacks standing to assert common law claims; and (5) Plaintiff's common law claims are barred by SLUSA.  This brief is submitted in case this Court may wish to take up the alternative ground of the sufficiency of the RICO claims against Bank Austria.

## PRELIMINARY STATEMENT

SIPC and the Trustee for the Madoff estate (collectively, "Plaintiff") seek to recover directly from Bank Austria some $59 **billion** on the basis of joint and several liability.  This sum represents treble the amount of *all* losses purportedly suffered in the Madoff Ponzi scheme worldwide, even though the feeder funds that are the subject of the instant action are only a handful of those involved, and represent only a percentage of the total amounts invested with Madoff.  The allegations of fact for which these mammoth recoveries are sought, however, are threadbare and do not point to liability on the part of Bank Austria.

The damage done to Bank Austria by the mere filing and continued existence of these bogus allegations is substantial.  Faced with an alleged liability equal to just under one-sixth of

---

[1] Bank Austria submits this motion without prejudice to, and without waiver of, any rights, arguments or defenses it may have at law or equity including, without limitation, personal jurisdiction.

the gross domestic product of Austria,[2] the bank remains under a cloud. These difficulties are particularly acute in Europe, where the filing of weak or frivolous suits is rare because of "loser-pays" rules, and where regulators, investors and customers unfamiliar with US litigation do not understand American standards for notice pleading, and may mistakenly believe that the filing of a lawsuit means the claims are meritorious.

Despite the threatened catastrophic damages, Plaintiff's RICO claims are hollow. As shown below, Plaintiff has failed to allege facts to support claims that Bank Austria:

- was a knowing participant, or even had knowledge of, the alleged Madoff-Kohn scheme;
- had a motive to participate in Madoff's Ponzi scheme;
- engaged in a continuous pattern of racketeering activity;
- exercised any degree of control over the alleged criminal enterprise; or
- proximately caused plaintiff's injury.

### THE ALLEGATIONS AGAINST BANK AUSTRIA

Bank Austria, identified in the complaint as one of the "Financial Institution Defendants" (*see* Amended Complaint ("AC") at p.45), is an Austrian bank headquartered in Vienna that is a substantially wholly owned subsidiary of defendant UniCredit. Stripped of improper group pleading, conclusory pleading, legal conclusions and pleading "on information and belief," the Amended Complaint alleges that Bank Austria:

> (i) helped create and owned 25% of Bank Medici, which was controlled by and was the alter ego of defendant Sonja Kohn (*see* AC ¶¶ 22-24, 26, 92, 239, 266, 277-78);
>
> (ii) helped Bank Medici obtain its banking license and provided it with banking infrastructure and facilities (*id.* ¶ 23-24, 26, 279-80, 282, 288, 300);

---

[2] The US Department of State reports that 2010 Gross Domestic Product for Austria is $376.1 billion. See http://www.state.gov/r/pa/ei/bgn/3165.htm.

        (iii) created and owned the majority of shares of BA Worldwide Fund Management ("BAWFM"), the investment advisor to Primeo until April 25, 2007, and directly provided investment advisory services to the Primeo Funds until that same date (*id.* ¶¶ 267-69);

        (iv) had certain of its representatives meet with Madoff in New York on various occasions (*id.* ¶¶ 28, 112-115, 255, 264-65, 328-29);

        (v) received an assignment of the PRIMEO trademark from Eurovaleur in 2001 (*id.* ¶¶ 77, 258-59);

        (vi) caused BA accounts to be opened at BLMIS in New York (*id.* ¶¶103, 112-116);

        (vii) caused proceeds to be sent and received from certain accounts, (*id.* ¶¶108-109, 112, 114), and received profits and fees from BLMIS (*id.* ¶¶ 19, 270-271, 291, 303); and

        (viii) created, marketed and distributed the Primeo, Herald, Herald Lux, Alpha Prime and Senator Funds (*id.* ¶¶23, 261, 263, 290, 292, 304, 322-323, 325-326, 361-362).

These activities are ordinary investment, banking and financial services.

    The Amended Complaint contains a handful of additional allegations that Bank Austria marketed and distributed the Primeo, Herald, Herald Lux, Alpha Prime and Senator funds as diversified funds even though Bank Austria knew or should have known that these funds were invested only in Madoff, that Madoff was the only *de facto* investment manager and custodian, and that no trades were actually being made on behalf of customers. (*See id.* ¶¶ 18, 27, 55, 260, 267, 378, 379, collectively, the "Marketing and Distribution Allegations"). These allegations are as follows (emphasis added):

Paragraph 18:

Members of the Medici Enterprise conspired to conceal the fact that each Medici Enterprise Feeder Fund was 100% invested with BLMIS. To bolster this deception, certain of the Medici Enterprise Feeder Funds invested in each other. This allowed Kohn and her co-conspirators to avoid regulatory and investor scrutiny, fostered the illusion of diversification, and disguised the fact that UniCredit, **Bank Austria**, Bank Medici, HAM, and other members of the Medici

Enterprise did nothing but feed money into BLMIS through the nominally different Medici Enterprise Feeder Funds.

Paragraph 27:

To investors in the Medici Enterprise Feeder Funds, HAM and Bank Medici both claimed that they, not Madoff or BLMIS, selected the individual equities that BLMIS pretended to purchase for investors. Bank Medici and HAM claimed that they ran Madoff's so-called "Split-Strike Conversion" strategy ("SSC Strategy"), and that BLMIS was merely an executing broker. UniCredit, **Bank Austria**, and Bank Medici were aware that HAM and Bank Medici did not perform these fictitious services.

Paragraph 55:

BLMIS's IA Business customers received fabricated monthly or quarterly statements showing that securities were held in, or had been traded through, their accounts. Although Kohn avoided exposure to the Ponzi scheme by never having a direct account with BLMIS, she directed that duplicate copies of BLMIS's fabricated statements be sent to her as well as to certain BLMIS accountholders that she fed into the Ponzi scheme. On information and belief, other key members of the Medici Enterprise, such as **Bank Austria**, UniCredit, Bank Medici, and HAM had access to every fabricated statement sent to the Medici Enterprise Feeder Funds as early as 1993.

Paragraph 260:

Primeo Fund - Kohn, **Bank Austria**, Randa, Scheithauer, Zapotocky, Kretschmer, Nograsek, and Kadrnoska conspired to market Primeo Fund as a diversified "fund of funds" while concealing the fact that Madoff and BLMIS would act as both investment manager and de facto custodian. In furtherance of the Illegal Scheme, **Bank Austria** generated misleading Primeo Marketing materials and distributed them to other members of the Medici Enterprise.

Paragraph 267:

Kohn, BA Worldwide, and Primeo Fund - Soon after Kohn's arrival in Austria, Kohn sought to aggressively market Primeo Fund in Europe. To that end, **Bank Austria** incorporated BA Worldwide to be the supposed investment manager of Primeo Fund, despite the fact that Madoff actually performed these roles and would continue to do so for the duration of the Illegal Scheme.

Paragraphs 378 and 379:

Kohn Conspires to Conceal Bank Medici's Involvement with Madoff

378. In addition to concealing stolen Customer Property and other proceeds of the Illegal Scheme, Kohn needed to explain Bank Medici's blanket exposure to

> BLMIS to its clients. A few days after Madoff's confession, Bank Medici client and Herald (Lux) investor, Shpe, contacted her Bank Medici investment agent, Lavi, and demanded answers.
>
> 379. Like all who invested in the Medici Enterprise Feeder Funds through Bank Medici, **Bank Austria**, BA Worldwide, and Pioneer, the fact that every cent of every investment was fed directly to BLMIS was never disclosed.

Each of these Marketing and Distribution Allegations contain impermissible conclusory and speculative statements, and should be disregarded for purposes of this motion. *See, e.g., Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("labels and conclusions . . . [and] . . . formulaic recitation . . . will not do."); *Lerner v. Fleet Bank, N.A.,* 459 F.3d 273, 290–91 (2d Cir.2006) (plaintiff must allege specific facts supporting fraud and specific facts that support, at least, an inference of an intent to defraud); *MLSMK Investments Co. v. JP Morgan Chase & Co.*, 737 F. Supp. 2d 137, 144 (S.D.N.Y. 2010), *aff'd in part*, 2011 WL 2176152 (2d Cir. Jun. 6, 2011), *aff'd* ___ F.3d ___, 2011 WL 2640579 (2d Cir. Jul. 7, 2011) (allegations that defendants had access to certain information and should have "connected the dots" with respect to fraudulent activity were too speculative to support a RICO claim).

In particular, paragraph 18 contains conclusory statements that certain unidentified members of the Medici Enterprise conspired together. (AC ¶18). Paragraph 27 alleges broadly that Bank Austria and others were aware that Herald Asset Management ("HAM") and Bank Medici did not perform certain services, but the Amended Complaint contains no fact allegations as to what Bank Austria knew, or when, or how. (AC ¶27). Paragraph 55 alleges that Bank Austria and others "had access" to "fabricated statements," but provides no fact support. (AC ¶55).[3] Paragraph 260 alleges that Bank Austria and others "conspired" in the marketing of

---

[3] Paragraph 55 also is deficient: the allegations are pleaded "on information and belief," and plaintiff fails to "allege facts demonstrating the basis for the information and belief." *See,*

Primeo Fund, and generated and distributed "misleading Primeo marketing materials." This paragraph, however, fails to identify any specific marketing materials, false statements, or any factual basis for concluding that Bank Austria knew the statements were false, and provides no facts with regard to how, when, and the circumstances under which the purported conspiracy was formed. (AC ¶260). The Amended Complaint likewise lacks any factual support for Plaintiff's claim in paragraph 267 that Bank Austria created BA Worldwide Fund Management "to be the supposed investment manager of the Primeo Fund, despite the fact that Madoff actually performed these roles." (AC ¶267). Finally, paragraphs 378 and 379 contain no factual allegations that support the conclusory allegation that Bank Austria was one of a group of entities that concealed: (a) "Bank Medici's blanket exposure" to Madoff (AC ¶378); and (b) the alleged fact that "every cent of every investment was fed directly to BLMIS." (AC ¶379).

Additionally, these paragraphs constitute improper group pleadings. *See Atuahene v. City of Hartford*, 10 Fed. Appx. 33, 34 (2d Cir. 2001). Thus, paragraph 18 lumps Bank Austria with various identified and unidentified members of the Medici Enterprise, but does not articulate any specific acts attributable to Bank Austria. (AC ¶18). In paragraph 379, Bank Austria is lumped together with Bank Medici, BAWFM and Pioneer with respect to allegations that the fact that funds were sent to BLMIS "was never disclosed" to investors. (AC ¶379).

As a result, none of these Marketing and Distribution Allegations against Bank Austria is properly made, and each should be disregarded for the purposes of this motion.

Finally, Plaintiff alleges in paragraphs 404 and 406 that Bank Austria received allegedly improper transfers of funds from BLMIS:

---

*e.g., OSRecovery, Inc. v. One Groupe Int'l, Inc.,* No. 02 Civ. 8993, 2004 WL 238035, at *1 (S.D.N.Y. Feb. 9, 2004).

> 404. The Fraudulent Bank Austria Transfers
>
> Prior to the Filing Date, BLMIS transferred at least $1,749,628 (the "Bank Austria Transfers") to Bank Austria's direct BLMIS account, 1FN082 (hereafter, the "Bank Austria Account"), under circumstances which should have put Bank Austria on notice that the Bank Austria Transfers were fraudulent.
>
> . . . .
>
> 406. The Herald Fund Subsequent Transfers
>
> Defendants Kohn, HAM, Bank Medici, Bank Austria, UniCredit, APM Cayman, Hassans, Pioneer, Revi, Sofipo, Kastner, Medici Cayman, Bank Austria Cayman, Cosulich, de Sury, and Mugnai (the "Herald Fund Subsequent Transferee Defendants") received subsequent transfers from Herald Fund, which was not named as a defendant herein, but rather in a separate avoidance action.

(AC ¶¶404, 406). These conclusory allegations are substantially similar to the pleadings rejected by the Court in *MLSMK*, 737 F. Supp.2d at 144. They should be rejected here.

## ARGUMENT

Even if the Court were to infer from Plaintiff's insufficient pleadings that Bank Austria engaged in conduct other than providing ordinary banking, investment and financial services, these pleadings fail to allege any RICO violation. Plaintiff's RICO allegations fail to establish that Bank Austria: (i) committed a pattern of racketeering activity, (ii) conducted or participated in the affairs of the alleged enterprise, (iii) proximately caused the alleged injury, all of which are prerequisites to RICO liability, or (iv) was part of any RICO conspiracy.[4]

---

[4] In order to allege a claim under 18 U.S.C. §1962(c), a plaintiff must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" *DeFalco v. Bernas*, 244 F.3d 286, 306 (2d Cir. 2001 (citation omitted). These elements must be pleaded as to *each individual defendant*. *Id*. RICO claims based on fraud must be pled with particularity. *See Fresh Meadow Food Servs., LLC v. RB 175 Corp.*, 282 Fed. Appx. 94, 97 (2d. Cir. 2008).

### I.     Bank Austria Did Not Commit a Pattern of Racketeering Activity.

#### A.     Plaintiff Has Not Alleged that Bank Austria Committed Predicate Acts.

Bank Austria is alleged to have committed bank, mail and wire fraud.  AC ¶¶7, 423. These predicate acts require the pleading of culpable knowledge, in compliance with Fed. R. Civ. P. 9(b).  *See* UniCredit Br. at Section I(C)(1).  Nothing in the Amended Complaint, however, suggests that Bank Austria knew of or intended to participate in the Madoff-Kohn Scheme. Plaintiff alleges upon information and belief only that Bank Austria had access to monthly statements.  (See AC ¶55). In *MLSMK*, Judge Jones found a lack of constructive knowledge where the defendant had far more "access" to information.  *See MLSMK,* 1737 F. Supp.2d at 140, 144 (no constructive knowledge despite an internal investigation into Madoff's activities, having found "unusual activity," and liquidating its own investment in a Madoff-linked fund). Nor has Plaintiff alleged facts suggesting any recklessness on Bank Austria's part.  *See* UniCredit Br. at Section I(C)(2)(a).

Plaintiff has not alleged that Bank Austria had a motive to participate in the alleged enterprise.  A general desire to gain access to additional deposits from investors and earn fees on transactions is insufficient.  *See MLSMK* at 142-43.  Corporate entities cannot evade the eventual consequences of the collapse of a Ponzi scheme, as an individual might, and therefore their participation in Ponzi schemes "defies economic reason." *Kalnit v. Eichler*, 264 F.3d 131, 140-41 (2d Cir. 2001).[5]  Corporations do not typically act against their economic interests; the

---

[5] *See also South Cherry St. v. Hennessee Group LLC*, 573 F.3d 98, 113 (2d Cir. 2009) (rejecting inference that consultant "would deliberately jeopardize its standing and reliability, and the viability of its business, by recommending" a fraudulent hedge fund "to a large segment of its clientele"); *Schmidt v. Fleet Bank*, 1998 WL 47827 (S.D.N.Y. Feb. 4, 1998) (holding that a corporation's knowing participation in a Ponzi scheme was improbable because of the risk of eventual fallout).

allegations are implausible and unworthy of credence.  *See generally Twombly*, 550 U.S. at 556.  Plaintiff's assertions of a profit motive, *see, e.g.* AC ¶¶22, 287, do not suffice to establish Bank Austria's commission of the alleged predicate acts.  *See Duncan v. Pencer*, No. 94 Civ. 0321, 1996 WL 19043 at *10 (S.D.N.Y. Jan. 18, 1996) (finding it "economically irrational" that a large firm "would knowingly condone … fraud in order to preserve a fee that, at best, is an infinitesimal percentage of its annual revenues and, by doing so, jeopardize its reputation and license, as well as subject itself to potential damages literally tens of thousands of times as large as its fee.").

      B.    Plaintiff Has Not Alleged a Continuous Pattern of Racketeering Activity by Bank Austria.

The Amended Complaint fails to plead facts establishing either "closed-ended" or "open-ended continuity" for Bank Austria's alleged pattern of racketeering activity.  *See H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 239 (1989).  "In determining the duration of a pattern of racketeering activity, courts focus solely on the predicate acts of racketeering each defendant is alleged to have committed."  *Int'l Bhd. of Teamsters v. Carey*, 163 F.Supp.2d 271, 280-81 (S.D.N.Y. 2001) (citing *DeFalco v. Bernas*, 244 F.3d at 321 and *H.J. Inc.*, 492 U.S. at 242).  The allegations specific to Bank Austria are plainly insufficient to establish either form of continuity.

Closed ended continuity is demonstrated by predicate acts that amount to continued criminal activity by a particular defendant.  "To establish closed-ended continuity, 'a plaintiff must provide some basis for a court to conclude that defendants' activities were neither isolated or [sic] sporadic.'"  *DeFalco*, 244 F.3d at 321 (quoting *GICC Capital Corp. v. Technology Finance Group, Inc.,* 67 F.3d 463, 467 (2d Cir.1995).  Additionally, plaintiffs must prove a series of related predicates extending over a substantial period of time, which the Second Circuit

-9-

has repeatedly stated means at least two years.  *See*, *e.g.*, *Fresh Meadow Food Services, LLC v. RB 175 Corp.*, 282 Fed. Appx. 94, 98 (2nd Cir 2008); *First Capital Asset Management, Inc. v. Satinwood, Inc.*, 385 F.3d 159, (2d Cir. 2004); *OSRecovery, Inc. v. One Groupe Intern., Inc.*, 354 F.Supp.2d 357, 373 (S.D.N.Y. 2005) ("The Second Circuit has never found a close-ended pattern where the predicate acts spanned fewer than two years."); *Rosner v. Rosner*, 766 F.Supp.2d 422, 425 (E.D.N.Y. 2011) (same).  Here, the alleged predicate acts occurred during a three month period.  *See* AC ¶275.

Open-ended continuity requires a showing of "a threat of continuing criminal activity beyond the period during which the predicate acts were performed." *Cofacredit, S.A. v. Windsor Plumbing Supply Co. Inc.,* 187 F.3d 229, 242 (2d Cir. 1999).  Where there is no chance of repetition, the criminal activity cannot be "continuing" and open-ended continuity cannot be established.  *See Calka v. Kucker Kraus & Bruh, LLP*, No. 99 Civ. 4999, 2000 WL 557266 at *8 (S.D.N.Y. May 8, 2000), *aff'd* 242 F.3d 364 (2d Cir. 2000).  Bank Austria's alleged misconduct is incapable of continuing because the account into which the allegedly fraudulent transfers were made was closed in 1996.  *See* AC ¶274.  Moreover, Bank Austria sold its funds business in 2007.  (*See, e.g.*, AC ¶¶108, 117, 269).  Having failed to allege either the open-ended or closed-ended continuity of Bank Austria's alleged acts, Plaintiff cannot recover under §1962(c).

## II. Bank Austria Did Not "Conduct or Participate in" the Affairs of the Enterprise.

Plaintiff must establish that Bank Austria "conduct[ed] or participate[d], directly or indirectly, in the conduct of [an] enterprise's affairs." *See* 18 U.S.C. §1962(c).  *See also* UniCredit Br. at I(C)(2)(b).  The RICO claims against Bank Austria must be dismissed because Plaintiff has alleged only that Bank Austria provided "services that were helpful to an enterprise," without alleging facts that, "if proved, would demonstrate some degree of control

-10-

over the enterprise.'" *First Cent. Sav. Bank v. Meridian Residential Capital*, No. 09-CV-3444 (DLI) (LB), 2011 WL 838910 at *8 (E.D.N.Y. Mar. 3, 2011) (quoting *Elsevier Inc. v. W.H.P.R., Inc.*, 692 F. Supp. 2d 297, 308 (S.D.N.Y. 2010)).

The Amended Complaint makes clear that the persons or entities who controlled the alleged criminal enterprise were Mr. Madoff and Ms. Kohn, not Bank Austria. *See*, *e.g.*, AC ¶1 ("For more than 20 years, Kohn masterminded a vast illegal scheme to exploit her privileged relationship with Madoff to feed over $9.1 billion of other people's money into his Ponzi scheme."), AC ¶285 ("Madoff, Kohn and Bank Medici controlled Bank Austria's and the Madoff-Kohn Enterprise Feeder Funds' relationship with Madoff and BLMIS."). The fact that at least 44 of the 57 defendants were under Kohn's control (the so-called "Kohn Family Defendants," "Kohn Sham Entity Defendants," "Bank Medici Defendants," and "Kohn's Holding Company Defendants") is further evidence of Plaintiff's theory of who controlled the enterprise. Moreover, the "illegal scheme" allegedly began in the early 1980s when Kohn met Madoff, *id*. at ¶¶2, 160-162, many years before the earliest allegation of Bank Austria's involvement, *id*. at ¶276 (alleging that, in 1995, Kohn and others introduced officials of Bank Austria to Madoff), ¶288 (Bank Austria's alleged involvement in Bank Medici's receiving a banking license in 2003), and ¶290 (Bank Austria's involvement in launching the Herald Fund in 2004). Finally, Kohn also is alleged to be the 75% shareholder and controlling entity of Bank Medici, which is identified in the Amended Complaint as the alter ego of Kohn. (See AC ¶¶22-24 (entitled, "Bank Medici is Kohn"), 92, 285).

Plaintiff's allegations, even if true and properly pleaded, are insufficient to support a finding that Bank Austria maintained the necessary control over the enterprise. *See Dep't of Econ. Dev. v. Arthur Andersen & Co. (U.S.A.)*, 924 F. Supp. 449, 467 (S.D.N.Y. 1996) ("[E]ven

-11-

provision of services essential to the operation of the RICO enterprise itself is not the same as participating in the conduct of the affairs of the enterprise.") (citation omitted); *Indus. Bank of Latvia v. Baltic Financial Corp.*, 1994 WL 286162 at *3 (S.D.N.Y. June 27, 1994) ("That Asia Bank provided banking services – even with knowledge of the fraud – is not enough to state a claim under 1962(c)."). *See also*, *e.g.*, *Redtail Leasing, Inc. v. Bellezza*, No. 95 Civ. 5191, 1997 WL 603496 at *5 (S.D.N.Y. Sept. 30, 1997) ("A defendant does not 'direct' an enterprise's affairs under § 1962(c) merely by engaging in wrongful conduct that assists the enterprise.").

Finally, Plaintiff's assertions that Bank Austria assisted Kohn in prolonging the Madoff Ponzi scheme by "feeding" funds into BMIS, *id.* ¶18, or concealing aspects of Kohn's Illegal Scheme, *id.* ¶¶18, 260, are insufficient to establish the control needed for RICO liability, *see*, *e.g.*, *Rosner v. Bank of China*, 528 F. Supp. 2d 419, 431 (S.D.N.Y. 2007) (finding no liability even though defendant "provided banking services that aided in the perpetration of the fraudulent scheme"). Even if Bank Austria had been used by Kohn and Madoff to further their scheme, §1962(c) "liability depends on showing that the defendants conducted or participated in the conduct of the 'enterprise's affairs' not just their own affairs." *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993). Plaintiff has alleged only that Bank Austria was conducting its own affairs.

### III. Plaintiff Has Failed to Plead that Bank Austria Proximately Caused Plaintiff's Injury.[6]

RICO plaintiffs must show both "but for" causation and "proximate cause." *Holmes v. Securities Investor Protection Corp.,* 503 U.S. 258, 268-69 (1992). To establish proximate

---

[6] The failure to plead Bank Austria's violation of § 1962 and that Bank Austria's violation proximately caused Plaintiff's injury also means that Plaintiff lacks RICO standing. *See DDR Const. Svs., Inc. v. Siemens Industry, Inc.*, 770 F.Supp.2d 627, 650 (S.D.N.Y. 2011) (*quoting Lerner*, 318 F.3d 113 at 120 (2d Cir. January 22, 2003)) ("Standing under RICO requires that a plaintiff 'plead, at a minimum, (1) the defendant's violation of § 1962, (2) an injury to the plaintiff's business or property, and (3) causation of the injury by the defendant's violation.'").

cause, a court considers the "direct relation between the injury asserted and the injurious conduct alleged," *id*. at 268, focusing on "whether the alleged violation led directly to the plaintiff's injuries," *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006).  "A predicate act does not proximately cause an injury if it merely furthers, facilitates, permits or conceals an injury that happened or could have happened independently of the act." *Vicon Fiber Optics Corp. v. Scrivo*, 201 F. Supp. 2d 216, 219 (S.D.N.Y. 2002).  Likewise, "[w]hen factors other than the defendant's fraud are an intervening direct cause of a plaintiff's injury, that same injury cannot be said to have occurred by reason of the defendant's action." *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 771 (2d Cir. 1994).

Plaintiff has not shown a causal link between Bank Austria's alleged predicate acts and any injury that may have been suffered by BLMIS "investors."  The enterprise and Madoff's Ponzi scheme existed well before and completely separate from any of Bank Austria's alleged acts.  (*See* AC ¶¶50, 155, 160, 162, 167-168, 172, 176, 205-209).  At most, Bank Austria "further[ed], facilitate[d], permit[ted] or conceal[ed] an injury that happened or could have happened independently of the act," *Vicon Fiber Optics Corp.*, 201 F. Supp. 2d at 219, but that is insufficient to establish that their injury "flow[ed] from the commission of the predicate acts," *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 497 (1985).

## IV.  Plaintiff Has Failed to Allege that Bank Austria was Part of Any RICO Conspiracy under 18 U.S.C. §1962(d).

As set forth more fully in the UniCredit Brief, a conspiracy claim under § 1962(d) requires a plaintiff to establish that "each defendant, by words or actions, manifested an agreement to commit two predicate acts in furtherance of the common purpose of a RICO enterprise," by showing that each defendant "knew of the conspiracy's goals and agreed to facilitate them." *Nasik Breeding & Research Farm Ltd. v. Merck & Co., Inc.*, 165 F. Supp. 2d

514, 540 (S.D.N.Y. 2001) (quoting *Colony at Holbrook, Inc. v. Strata, Inc.,* 928 F.Supp. 1224, 1238 (E.D.N.Y.1996)).  *See also Salinas v. United States.*, 522 U.S. 52, 65 (1997).  The RICO conspiracy claim fails to plead facts which show that Bank Austria knew of and agreed to participate in an illegal conspiracy.  *See United States v. Viola*, 35 F.3d 37, 44 (2nd Cir. 1994); *Nasik*, 165 F.Supp.2d at 540.  *See also infra* at 8-9.

The only allegations that describe any conspiracy or illicit agreement involve Kohn and Madoff.  (*See* AC ¶¶165, 170, 176, 229).  The Amended Complaint alleges that Bank Austria created and marketed various so-called Feeder Funds, *see* AC ¶¶255-56, 260, 290, and that Bank Austria lent "credibility" to Kohn's activities, *id*. ¶¶22, 285, but that is a far cry from knowledge or agreement to participate in a conspiracy.  Even the improper "group-pled" allegation that Bank Austria and several others knew that the Funds were funneling money to Madoff, *see* AC ¶¶260, 379, and were therefore complicit in some of the alleged predicate acts is insufficient, because mere agreement to commit predicate acts, standing alone, is not enough to establish liability under §1962(d), *see*, *e.g.*, *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 792 n.8 (3d Cir. 1984).

The Complaint alleges only that Bank Austria conducted normal and routine banking and financial services in Austria and elsewhere abroad.  It is of no moment that Bank Austria's services are alleged to have had the effect of furthering the Madoff Ponzi scheme or that Bank Austria earned fees.  Bank Austria's knowledge of or an agreement to participate in the conspiracy is necessary for liability under §1962(d) and Plaintiff has alleged nothing of the sort.  *See Viola*, 35 F.3d at 44 (recognizing that it is an "elementary principle of conspiracy law that a person cannot be [found liable for] agreeing to participate in a conspiracy if he has no knowledge that the conspiracy even exists").

-14-

-15-

## CONCLUSION

For the foregoing reasons, and those set forth in the UniCredit Brief, this Court should dismiss with prejudice Counts 1, 2, 20, 21 and 22 of the Amended Complaint against Bank Austria.

Dated: July 25, 2011  
       New York, New York

Respectfully submitted,

SULLIVAN &WORCESTER LLP

/s/ Franklin B. Velie  
Franklin B. Velie  
Jonathan G. Kortmansky  
Mitchell C. Stein  
1290 Avenue of the Americas  
New York, New York 10104  
Telephone: (212) 660-3000  
fvelie@sandw.com  
jkortmansky@sandw.com  
mstein@sandw.com

*Attorneys for Defendant  
UniCredit Bank Austria AG*